UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:17-cv-02166 |
| ) | |
| THE M/Y GALACTICA STAR et al. ) | |
| ) | |
| Defendants in Rem ) | |
| ) | |
| ) | |

### UNITED STATES' APPLICATION FOR PROTECTIVE ORDER UNDER 18 U.S.C. § 983(j)

I.   **Introduction**

Pursuant to 18 U.S.C. § 983(j), Plaintiff United States of America respectfully brings this application for a protective order to preserve and maintain the lead *in rem* Defendant in this action, the M/Y *Galactica Star*. The *Galactica Star*, a 65-meter motor yacht originally purchased for more than $80 million, is currently moored near Cancun, Mexico. As detailed below, the *Galactica Star*'s owner has, until recently, repeatedly failed to pay crew fees and other fees necessary to maintain the insurance and security of the vessel. By its own admission, this non-payment of fees has created an "imminent risk" to the vessel. Even worse, there is strong circumstantial evidence that the *Galactica Star*'s owner engineered a feigned or collusive Mexican lawsuit in an effort to keep the *Galactica Star* in Mexico and shield it from the Court's arrest warrant *in rem*.

Notably, this is not the only time that a suspiciously-timed collateral suit has tried to encumber some of the assets that are at issue in this *in rem* action. On or about the same day that the Mexican lawsuit was filed, multiple bankruptcy actions were filed in the Southern District of

1

Florida which had the effect of staying a foreclosure auction against an asset implicated in both this forfeiture case and a foreclosure action pending in New York state court. The bankruptcies, filed on or about July 3, 2017, were dismissed for cause on September 27, 2017, but not before the U.S. Trustee's Office determined that they had been filed in bad faith and were "a fraud upon this Court." *See, e.g.*, *Emerg. Mot. of the U.S. Trustee for an Order Dismissing Cases*, at 2, ECF No. 83, *In re: Earnshaw Assocs. Ltd.*, No. 17-18432-RAM (Bankr. S.D. Fla. Sept. 22, 2017).

To protect and secure the *Galactica Star* in line with this Court's arrest warrant *in rem*, the United States respectfully requests that Lightray Capital, LLC ("Lightray")—the purported corporate parent to and sole director of the *Galactica Star*'s owner, Earnshaw Associates Ltd. ("Earnshaw")—be ordered to cause Earnshaw to pay all necessary fees to maintain and secure the *Galactica Star* until it can be sailed into U.S. waters and placed in the custody of the Court. The United States further requests that Lightray be ordered to take all steps, through Earnshaw, to bring the *Galactica Star* into U.S. waters, including taking all available steps to overcome or dissolve the purported attachment in the Mexican lawsuit that supposedly forbids the *Galactica Star* from leaving Mexico.

**II.     Background**

     **A.     The *Galactica Star* and This *In Rem* Action**

The United States filed this *in rem* civil forfeiture action against the *Galactica Star* and other assets on July 14, 2017. In the operative Complaint (Dkt. 33-1), the United States alleges that the *Galactica Star* was purchased with money derived from massive fraud and bribery in the Nigerian oil industry. These funds to buy the asset or complete the purchase were transferred through U.S. financial institutions. This Court issued an arrest warrant for the *Galactica Star* on

October 30, 2017. (Dkt. 36.) The *Galactica Star* is currently moored at V&V Marina, just north of Cancun, Mexico.

The *Galactica Star* was purchased by Earnshaw, a corporation incorporated in the British Virgin Islands, for approximately $82 million in 2013. (Dkt. 33-1 at ¶ 162.) At that time, Earnshaw was wholly owned by Kolawole Aluko, one of the Nigerian nationals who is alleged to have committed the fraud and corruption giving rise to this forfeiture action. (*Id.* at ¶ 23.) Lightray, a Florida corporation, has represented that on or about July 10, 2017, Aluko transferred his entire interest in Earnshaw to Lightray and that Lightray thereafter was appointed the sole director of Earnshaw. The United States is not, at this time, able to verify whether this purported transfer of Earnshaw to Lightray was proper and valid. Nevertheless, to the extent Lightray avers that it is in fact the owner and sole director of Earnshaw, it is in that capacity responsible, through Earnshaw, for the maintenance and preservation of the *Galactica Star*.

### B. The Non-Payment of Fees to Maintain the *Galactica Star*

Earnshaw had entered into contracts with Nigel Burgess Ltd. and Burgess Crew Services (Guernsey) PCC Ltd. (collectively "Burgess") to provide a crew to service and maintain the *Galactica Star*. On or before July 2017, Earnshaw stopped making payments under these contracts, and Burgess accordingly terminated the contracts, effective November 23, 2017. (Sohn Decl.,[1] Ex. A [11.23.17 email from Moyse to Hatcher].) Following the termination of the contracts, some of the crew members left the *Galactica Star*, while other crew members remained. Following conversations with Lightray's counsel about the security of the yacht and returning the yacht to U.S. waters, on December 13, 2017, Lightray's counsel wrote to the United States, acknowledging that "there is an imminent risk that the eight crew members who

---

[1] All exhibits are to the Declaration of Joshua L. Sohn ("Sohn Decl."), filed herewith.

remained onboard will abandon the GS [*Galactica Star*] if they are not paid, which will cause GS to lose insurance and would likely lead to other consequences that result in the significant deterioration of the vessel and diminution of its resale value, if not the outright destruction or theft of the vessel." (Sohn Decl., Ex. B [12.13.17 email from Rosenberg to Khoo].)

On December 20, 2017, the United States wrote to Lightray's counsel to formally request that Lightray and/or Earnshaw pay the requisite fees to maintain the *Galactica Star* and take all reasonable efforts to bring the vessel to the United States. (Sohn Decl., Ex. D [12.20.17 ltr. from Khoo to Levander].) The United States explained that it would seek court intervention if Lightray did not take these steps. The parties met and conferred by telephone on December 22, 2017, at which time Lightray's counsel stated that he would confer with Lightray about the United States' request and revert back by early the following week. On December 27—having not heard back from Lightray's counsel—the United States sent an email reiterating its request. (Sohn Decl., Ex. E [12.27.17 email from Khoo to Levander].)

On the evening of January 2, Lightray's counsel sent the United States a letter explaining that it had recently paid €80,665.06 in crew fees for the month of November 2017. (Sohn Decl., Ex. F [1.2.18 ltr. from Rosenberg to Khoo].) However, this same letter explained that Lightray still owed €95,894.54 in crew fees, and it was unclear from the letter when (or if) Lightray would pay those fees. (*Id.*) Lightray also stated that it had exchanged a *proposed* Yacht Management Agreement with a third-party company to maintain the *Galactica Star* going forward, but that this proposed Agreement was still unsigned. (*Id.*)

      **C.**      **The Mexican Lawsuit Purporting to Restrain the *Galactica Star***

On or about July 3, 2017, after a foreclosure action was filed against Aluko assets in New York state court, a Mexican attorney—José Enrique Uruñuela López—filed a debt collection

4

action in Mexican civil court against Earnshaw and Aluko, seeking repayment of a purported $6,120,000 debt ("the Mexican Lawsuit"). Mr. Uruñuela later wrote to the captain of the *Galactica Star* to state that he had attached the *Galactica Star* as an asset that could be used to satisfy the debt and that the *Galactica Star* was therefore forbidden from leaving Mexican waters. (Sohn Decl., Ex. C [9.11.17 ltr from Lopez to Alpers].) In communications with the United States, Lightray has also taken the position that the Mexican attachment prevents Lightray from transporting the vessel to U.S. waters.

There are strong reasons to suspect that the Mexican Lawsuit is a feigned or collusive suit engineered by Mr. Aluko for the specific purpose of keeping the *Galactica Star* in Mexico. First, the underlying debt is suspect. According to a document in the Mexican Lawsuit, in April 2015 the plaintiff in that case—a Mexico City attorney who was 31 years old at the time—made an unsecured $6,120,000 loan to Earnshaw and Aluko, on which the two debtors promptly defaulted by failing to make a single installment payment. (Sohn Decl., Ex. G [Mexican case file, Lopez Decl. at 3-6].) Yet the Mexican Lawsuit was not filed until July 2017, more than two years later and right before this *in rem* action was filed against the *Galactica Star*.

Second, the Mexican Lawsuit bears a striking resemblance to multiple bankruptcy proceedings brought in the Southern District of Florida in July 2017 that the U.S. Trustee's Office determined to have been fraudulent, *see, e.g.*, *Emerg. Mot. of the U.S. Trustee for an Order Dismissing Cases*, at 2, ECF No. 83, *In re: Earnshaw Assocs. Ltd.*, No. 17-18432-RAM (Bankr. S.D. Fla. Sept. 22, 2017), and that the bankruptcy court ultimately dismissed for cause. The Mexican Lawsuit and the bankruptcies were filed on or about the same day. Like the Mexican debt, the bankruptcies were founded on a purported years-old unsecured foreign debt on which Mr. Aluko and his affiliated companies had immediately defaulted, but as to which the

creditors took no legal action until on or just before a remarkable coincidence of events: the filing of the Mexican Lawsuit, the filing of this civil forfeiture action, and the foreclosure auction of another of Mr. Aluko's assets. Furthermore, in an August 7, 2017 bankruptcy filing by Earnshaw—which was, by then, under the control of Lightray—the company candidly acknowledged that its reason for filing a Chapter 11 petition was to "[s]top foreclosure and forteiture [sic]." *In re Earnshaw Assoc., Ltd.*, No. 17-18432-RAM, ECF No. 20 at 1 ¶ 5 (Bankr. S.D. Fla. August 7, 2017).

Third, Mr. Aluko explicitly used the Mexican Lawsuit as an excuse for a time to remain onboard the *Galactica Star* and to prevent it from leaving Mexican waters, even after he had purportedly sold his interest in Earnshaw to Lightray and thus no longer had a right to remain aboard or instruct the crew. Specifically, on or about July 21, 2017, in the midst of the bankruptcy proceedings, creditor Banque Havilland,[2] exercising its rights under a loan agreement and related undertakings, directed Burgess, as the manager of the *Galactica Star*, to sail the vessel to its port of registry in the Cayman Islands. However, the next day, a representative of Burgess reported that Aluko (i) remained on board and intended to remain on board, (ii) denied to the captain that Banque Havilland had any authority to direct the yacht's movements, (iii) directed the captain to switch off the vessel's Automatic Identification System—the system which permitted Banque Havilland and the United States to track the location of the yacht—and (iv) "told the Captain that there is a forthcoming Court Order

---

[2] Banque Havilland has registered a first priority mortgage against the *Galactica Star* and is a claimant in this action. *See* Dkt. 55.

forbidding the yacht from leaving Mexican waters". (Sohn Decl., Ex. H [7.22.17 email from Dallimore to Hiltunen].)[3]

Fourth, even Lightray has expressed skepticism about the legitimacy of the Mexican lawsuit. In telephonic meet-and-confers with the United States on December 22, 2017, and January 4, 2018, Lightray's counsel stated that a lawyer had appeared in the Mexican Lawsuit who purported to act for Earnshaw, but that Lightray—the alleged owner of Earnshaw—was not aware of any authorization for the attorney to appear on Earnshaw's behalf. Lightray has indicated it will retain competing Mexican counsel to appear on Earnshaw's behalf. Counsel for Lightray has further stated that it is questionable whether the Mexican lawsuit is a legitimate lawsuit at all. (Sohn Decl., ¶ 11.)

### D. Lightray Files a Formal Claim In This Court Over the *Galactica Star*

On December 29, 2017, Lightray filed a purported Verified Claim and Statement of Interest in this action. (Dkt. 61.) In this filing, Lightray stated that it owned 100% of stock in Earnshaw and therefore has an interest in the *Galactica Star*. (*Id.* at ¶ 3.) Lightray also stated that it was expressly limiting its appearance to "asserting and defending [its] claim" under Rule E(8) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and further stated that it was not waiving any jurisdictional defenses. (*Id.* at ¶ 5.)[4]

### E. The Parties' Final Meet-and-Confer Efforts

As alluded to above, the parties met and conferred several times regarding the issues in this motion. On January 5, 2018, the United States wrote to Lightray's counsel to say that "until

---

[3] On September 1, 2017, pursuant to an agreed order of the bankruptcy court, Earnshaw instructed Burgess to reengage the AIS, to remove Mr. Aluko from the *Galactica Star*, and to sail the yacht to Fort Lauderdale. Only the first two requests were complied with.
[4] As explained in Section III(C), *infra*, Lightray's purported limited appearance under Rule E(8) does not affect the Court's jurisdiction to issue the orders requested by this motion.

there is a credible commitment and plan in place to lift or set aside the [Mexican] order of attachment within some reasonable timeframe, the government's position remains unchanged: the party with custody and control of the yacht should be responsible for any costs necessary to preserve and protect it . . . . In keeping with the above, the government intends to seek a protective order from the Court requiring Lightray, through Earnshaw, to preserve and protect the *Galactica Star* and to make all reasonable efforts to give effect to the Court's arrest warrant *in rem* by bringing the yacht into U.S. waters as soon as practicable." (Sohn Decl., Ex. I [1.5.18 email from Khoo to Levander].) Lightray's counsel responded by saying: "We are getting a budget and a timeline from Mexican counsel to intervene, attack the order and/or post a bond. Apparently that process will take several weeks but we will have a more refined estimate early next week." (*Id.* [1.5.18 email from Levander to Khoo].) The United States wrote back on January 8, explaining that:

> [T]he United States will be filing a motion tomorrow acknowledging the steps recently taken to address the safety and security of the yacht and to compel Lightray to continue paying the necessary fees to secure and maintain the *Galactica Star* until such time as it is freed of the Mexican attachment and can be brought to the United States. Our motion will also request that Lightray take all available steps in the Mexican lawsuit to dissolve or overcome the attachment, and to provide weekly updates to the S.D. Tex. Court and the parties regarding its efforts in the Mexican lawsuit (said updates to include copies of all papers filed by any party in the Mexican lawsuit).

(*Id.* [1.8.17 email from Khoo to Levander].) The United States also invited Lightray's counsel to meet-and-confer about this request. (*Id.*) Lightray's counsel made no response.

### III. Argument

#### A. Lightray Should be Ordered to Pay and Continue Paying the Necessary Fees to Preserve, Secure, and Maintain the *Galactica Star*

As detailed above, the past failure of Lightray and/or Earnshaw to pay crew fees and other maintenance costs for the *Galactica Star* has imperiled this asset. This is undisputed: Lightray itself admitted just last month that "there is an imminent risk that the eight crew members who remained onboard will abandon the GS [*Galactica Star*] if they are not paid, which will cause GS to lose insurance and would likely lead to other consequences that result in the significant deterioration of the vessel and diminution of its resale value, if not the outright destruction or theft of the vessel." (Sohn. Decl., Ex. B [12.13.17 email from Rosenberg to Khoo].) Unpaid crew members could also claim a lien on the *Galactica Star*, which would further encumber the vessel.

Moreover, this peril to the *Galactica Star* is not yet over. While Lightray apparently has recently paid €80,665.06 in crew fees for the November 2017 time period, Lightray admits that €95,894.54 in crew fees are still due. (Sohn Decl., Ex. F [1.2.18 ltr. from Rosenberg to Khoo].) Lightray also admits that there is no signed contract in place to provide critical yacht management services for the *Galactica Star* going forward. (*Id.*)

It logically follows that Lightray should be ordered to pay all necessary crew fees going forward, to prevent deterioration, destruction, or encumbrance of the *Galactica Star*. Such an order is authorized under 18 U.S.C. § 983(j), which empowers courts to "enter a restraining order or injunction . . . . or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture . . . ." Likewise, Lightray should be ordered to pay any other fees (besides crew fees) that are necessary to preserve, secure, and maintain the *Galactica Star* during its time in Mexico. Indeed, the caselaw states that whoever has current dominion

9

over an asset should pay for the upkeep of that asset under Section 983(j). *See, e.g., United States v. Real Prop. Known as 2291 Ferndown Lane*, No. 3:10CV00037, Dkt. 29 (W.D. Va. May 2, 2011) (ordering the current owner of the property "to maintain the present condition of the assets, maintain sufficient insurance on the property, and make timely payment of liens, mortgage payments, outstanding payments, interests and fees due, insurance, utilities, taxes and assessments" under Section 983(j)); *United States v. Real Prop. Located at 475 Martin Lane*, No. CV 04-2788ABC, 2006 WL 4954923, at *2 (C.D. Cal. Oct. 26, 2006) ("the terms of the stipulation requiring the occupants to timely pay future obligations (mortgage, taxes and insurance) as a condition of continued occupancy are consistent with 18 U.S.C. § 983(j), which permits the court to 'take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture.'").[5]

### B. Lightray Should Be Ordered to Take All Available Steps to Bring the *Galactica Star* Into the United States Without Further Delay

Lightray should also be ordered to take all available steps to bring the *Galactica Star* into the United States, so that the United States can give practical effect to the Court's arrest warrant *in rem*. On October 30, 2017, the Court asserted its *in rem* jurisdiction over the *Galactica Star* by issuing the arrest warrant and directing the FBI—or any other duly authorized law enforcement officer—to arrest the vessel. Because the vessel is located in Mexican territorial

---

[5] Lightray recently represented that it is willing to provide the funding necessary to maintain and preserve the *Galactica Star*, provided that the government agrees to subsequently reimburse Lightray for such expenses. But the government has no authority to pay for—or to reimburse Lightray for—the ordinary and predictable costs of maintaining and owning the *Galactica Star* so long as it remains outside the Court's and the government's control. The government has agreed—subject to the Court's approval—to use the proceeds of an interlocutory sale to cover the costs of transporting the *Galactica Star* to the United States and covering crew and maintenance needs once the government has possession and custody of the vessel. Until such time, however, Lightray has a duty to maintain and preserve the vessel.

10

waters, the United States has requested that the appropriate Mexican authorities seize the *Galactica Star* and return it to the United States. However, the execution of the warrant has been complicated by, among other things, an order of attachment issued in connection with the above-referenced Mexican Lawsuit. This order of attachment purports to prevent the vessel from leaving the territory of Mexico.

Lightray, as the purported sole director of Earnshaw, is uniquely positioned to challenge or remove the order of attachment, which is the primary obstacle to bringing the *Galactica Star* to the United States. Lightray, as Earnshaw's director, has—or should have—direct knowledge as to the legitimacy of the Mexican Lawsuit and the alleged debt that underlies it. If the debt represents a real and valid obligation, Lightray, through Earnshaw, should discharge the debt so as to disencumber the *Galactica Star* and place it within the control and custody of this United States District Court. If the debt is not valid, Lightray, through Earnshaw, should take all steps to vigorously and swiftly contest the Mexican Lawsuit and, in particular, seek to lift or set aside the order of attachment. Alternatively, Lightray, through Earnshaw, could post a bond as security in the Mexican Lawsuit in lieu of the current attachment against the *Galactica Star*. In short, Lightray, through Earnshaw, has multiple options for freeing the yacht and returning it to U.S. waters, and it should no longer be permitted to use the Mexican Lawsuit over a purported $6 million debt as an excuse to disregard the Court's arrest warrant *in rem* against an asset purchased for $82 million, and which the United States alleges to be criminal proceeds. Rather, the Court should require that the company, in good faith, take all reasonable steps to defeat, set aside, bond around, or otherwise remove the order of attachment.

Moreover, if Lightray contends that it is unable to bring the *Galactica Star* into the United States due to the Mexican Lawsuit, then Lightray should be required to prove up this

contention. Specifically, Lightray should be ordered to produce all filings by any party in the Mexican Lawsuit and thereafter to provide a weekly accounting to the Court detailing all the actions it has taken in the Mexican Lawsuit to try to free the *Galactica Star*. This weekly accounting should also attach all new pleadings or documents filed in the Mexican Lawsuit, given that the United States and the Court have no way of monitoring the Mexican Lawsuit themselves.[6] Finally, Lightray should provide sufficient information to assure the Court that the Mexican Lawsuit is a legitimate lawsuit, given the copious circumstantial evidence suggesting that the Mexican Lawsuit may be a feigned or collusive lawsuit designed to keep the *Galactica Star* in Mexico and frustrate this Court's arrest warrant *in rem*.

The United States acknowledges that, after repeated requests from the United States, Lightray recently stated that it is "getting a budget and a timeline from Mexican counsel to intervene, attack the order and/or post a bond." (Sohn Decl., Ex. I [1.5.18 email from Levander to Khoo].) While the United States appreciates this first tentative step that Lightray has agreed to take towards contesting the Mexican attachment, the fact remains that the Mexican attachment has existed since *July 2017*. At least by August 2017, Lightray had become aware of this attachment and was equally aware of this forfeiture action. Yet it was not until *last month* that Lightray agreed to take the first tentative step towards contesting this attachment and vindicating this Court's arrest warrant *in rem*. The United States and the Court should not be at the mercy of whatever tentative, voluntary steps Lightray decides to take towards contesting the Mexican attachment. Nor should the United States and the Court be at the mercy of whatever pace Lightray chooses to set in the Mexican Lawsuit. Rather, Lightray should be ordered to take *all*

---

[6] The United States understands that, per Mexican civil procedure, court filings are not publicly accessible to non-parties. Despite multiple efforts, the United States has not been able to obtain access to most of the filings in the Mexican Lawsuit.

*available steps* to contest the Mexican attachment, and should be ordered to keep the United States and the Court fully apprised of its progress on a weekly basis, to ensure that Lightray is acting diligently to free the *Galactica Star*. The Court's arrest warrant *in rem* demands no less.

### C. Lightray's Argument That the Court Lacks Jurisdiction Is Unavailing

In its Verified Claim and Statement of Interest, Lightray purported to reserve certain unspecified "jurisdictional defenses." (Dkt. 61 at ¶ 5.) However, by voluntarily appearing in this action and filing a Verified Claim and Statement of Interest, Lightray necessarily subjected itself to the *in personam* jurisdiction of this Court. *See Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330, 335 and n. 6 (5th Cir. 1978) (citing prior caselaw for the proposition "that owners who appeared in an in rem action to contest the plaintiffs' claim 'may equitably be treated as if they had been brought into court by personal process'").

Nor can Lightray avoid this Court's jurisdiction by styling its appearance as a restricted appearance under Supplemental Rule E(8). First, it is doubtful whether Rule E(8) applies to this action at all, given that this action arises under the civil forfeiture laws and is not an admiralty or maritime action (even though one of the forfeitable assets happens to be a ship). *See United States v. Labanese Candian Bank SAL*, 285 F.R.D. 262, 266 (S.D.N.Y. 2012) ("Supplemental Rule E(8) applies only to appearances made 'to defend against an admiralty and maritime claim.' However, 'Rule E(8), by its language and read in conjunction with other relevant Supplemental Rules, does not apply in civil forfeiture cases.'") (quoting *United States v. All Right, Title and Interest in Contents of Following Accounts at Morgan Guar. Trust Co. of N.Y.,* No. 95–cv–10929, 1996 WL 695671, at *14 (S.D.N.Y. Dec. 5, 1996).)

Second, even if Rule E(8) did apply to this action, a restricted appearance under Rule E(8) would still allow the Court to exercise *in personam* jurisdiction over Lightray up to the value of Lightray's claimed interest in the subject *res*. *Sea Hunters, LP v. S.S. PORT NICHOLSON*, No. 2:08-CV-272-GZS, 2013 WL 1789740, at *6 (D. Me. Apr. 26, 2013) ("Rule E(8) protects claimants in a *res* from subjecting themselves to general *in personam* liability **beyond the value of the *res*.**") (emphasis added); *United States v. Marunaka Maru No. 88*, 559 F. Supp. 1365, 1370-71 (D. Alaska 1983) (same). Here, the orders that the United States seeks would not impose liability on Lightray above and beyond Lightray's claimed interest in the *Galactica Star*. Rather, the United States merely asks that Lightray pay the requisite fees to maintain the *Galactica Star* and bring this ship swiftly into U.S. waters. Lightray cannot use Rule E(8) to shield itself from these requested orders, which merely seek to preserve the very *res* in which Lightray has claimed an interest.

## IV. Conclusion

For the foregoing reasons, the United States respectfully requests that Lightray be ordered to: (1) immediately pay all necessary fees to preserve, secure, and maintain the *Galactica Star*; and (2) immediately take all available steps to bring the *Galactica Star* into the territorial jurisdiction of the United States, including providing a weekly accounting of its efforts to free the *Galactica Star* from the Mexican attachment.

Respectfully Submitted,

DEBORAH CONNOR, ACTING CHIEF
MONEY LAUNDERING AND ASSET
  RECOVERY SECTION (MLARS)

By:    /s/ *Joshua L. Sohn*
      MARY BUTLER
      Chief, MLARS-International Unit
      STEPHEN CAMPBELL
      Deputy Chief, MLARS-IU
      MICHAEL W. KHOO (DC Bar No. 997796)
      JOSHUA L. SOHN (CA Bar No. 250105)
      Trial Attorneys, MLARS-IU
      United States Department of Justice
      1400 New York Avenue, NW
      Bond Building, Suite 10100
      Washington, DC 20005
      Telephone: (202) 353-2223
      Facsimile: (202) 616-2547
      Email: joshua.sohn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2018, I caused the foregoing "UNITED STATES' APPLICATION FOR PROTECTIVE ORDER UNDER 18 U.S.C. § 983(j)" to be served, via CM/ECF, to all counsel of record in this action.

By:    */s/ Joshua L. Sohn*
Joshua L. Sohn

## CERTIFICATE OF CONFERENCE

As detailed in the Background section of this Application, the United States has met and conferred in good faith with Lightray in an effort to seek resolution of this dispute. The parties have been unable to reach agreement, thus necessitating this Application.

By:    */s/ Joshua L. Sohn*
Joshua L. Sohn