UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff<br><br>          v.<br><br>THE M/Y *GALACTICA STAR*, et al.,<br><br>                    Defendants *In Rem*. | Case No. 4:17-cv-02166 |

**OPPOSITION TO UNITED STATES' APPLICATION
FOR PROTECTIVE ORDER UNDER 18 U.S.C. § 983(j)**

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036

SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002

*Attorneys for Claimant
LightRay Capital, LLC*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT ............................................................................................................................... 3

    I.    This Court Does Not Have Jurisdiction Over The Galactica Star ......................... 3

        A.    There Is No Statutory Basis For Jurisdiction In This Court Over the Galactica Star Because (1) No Acts Or Omissions Giving Rise to Its Forfeiture Occurred In This District, (2) The Galactica Star Is Not Found In This District, and (3) This Court Has No Control Over the Galactica Star And Never Has Had Such Control ...................... 4

            1.    No Acts Or Omissions Giving Rise to Forfeiture Occurred In This District .............................................. 4

            2.    The Galactica Star Is Not Found In This District .......................... 7

            3.    This Court Has No Control Over the Galactica Star ...................... 8

        B.    The Fifth Amendment Due Process Clause Prohibits the Exercise of Jurisdiction Over the Galactica Star in This District ........................... 10

    II.    If Granted, the Extensive and Burdensome Relief Sought by the Application Would Be Both Inequitable and Unconstitutional ........................... 11

CONCLUSION .......................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Harrods Ltd. v. Sixty Internet Domain Names*,
  302 F.3d 214 (4th Cir. 2002) ...................................................................................................10

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ..................................................................................................................11

*Shaffer v. Heitner*,
  433 U.S. 186 (1977)............................................................................................................10, 11

*United States v. $50,900 in United States Currency of IBC Bank Cashier's Check
  #162263996 in the Amount of $250,910 in United States Currency*,
  No. CV 15-14125, 2016 WL 4257328 (D. Mass. Aug. 11, 2016).............................................5

*United States v. 51 Pieces of Real Prop. Roswell*,
  17 F.3d 1306 (10th Cir. 1994) ...................................................................................................8

*United States v. Approximately $1.67 Million (US) in Cash*,
  513 F.3d 991 (9th Cir. 2008) .....................................................................................................5

*United States v. Funds Held in the Name or for the Benefit of Wetterer*,
  210 F.3d 96 (2d Cir. 2000).........................................................................................................6

*United States v. Lear Jet*,
  No. 2:04-cv-00363, Dkt. No. 94 (D. Ariz. July 26, 2005), at 7 .................................................9

*United States v. The M/Y Galactica Star*,
  Dkt. No. 70 (S.D. Tex. Jan. 9, 2018), at 3 ...............................................................................13

*United States v. Real Prop. Known as 2291 Ferndown Lane*,
  Dkt. No. 28 (W.D. Va. Apr. 29, 2011) at 2........................................................................12, 13

*United States v. Real Property Located at 475 Martin Lane*,
  No. 04-cv-2788, 2006 WL 4954923 (C.D. Cal. Oct. 26, 2006) ..............................................13

**Statutes**

28 U.S.C. § 1355(b)(1)(A)...............................................................................................................5

Claimant LightRay Capital, LLC ("LightRay") respectfully submits this memorandum of law in opposition to Plaintiff United States' Application for Protective Order Under 18 U.S.C. § 983(j) (the "Application" or "Pl. Br.").

## PRELIMINARY STATEMENT

Plaintiff's Application for a "protective" order seeks extraordinary relief that violates the United States Constitution. Far from seeking to preserve the status quo, Plaintiff requests that this Court order LightRay—a claimant of a yacht called the *Galactica Star*—to spend tens of thousands of Euros per month to maintain the yacht in Mexico, to retain legal counsel in Mexico to litigate and lift an attachment on the yacht, and then to bring the yacht into the United States so that this Court can exercise jurisdiction over it. All the while, Plaintiff claims that *it* is the rightful owner of the yacht, yet refuses to agree to reimburse LightRay for its costs. LightRay has already offered that it would pay the costs, and take the requisite steps, if Plaintiff were to agree that, should Plaintiff prevail in this action and then sell the yacht, it would reimburse LightRay for the costs that it has borne to maintain the yacht during this Action. Plaintiff, however, has refused LightRay's offer.

Plaintiff's Application should be denied for two independently dispositive reasons. First, this Court does not have jurisdiction over the *Galactica Star*. The Complaint fails to identify any acts in this District that would give this Court jurisdiction over the yacht; nor does it state that this Court has constructive control over the yacht. These are the prerequisites for jurisdiction, and in their absence, the Court cannot act. *See infra* Section I. Second, the action that Plaintiff seeks is not only inequitable, but it also effectively requires LightRay to work for the government in violation of the Takings Clause and the Thirteenth Amendment. *See infra* Section II.

Plaintiff's attempt to use the civil forfeiture laws to force LightRay to pay millions of dollars and deliver the yacht into United States waters to help Plaintiff establish jurisdiction constitutes overreaching by Plaintiff and an abuse of the civil forfeiture laws. The Application should be denied.

## STATEMENT OF FACTS

Plaintiff commenced this civil forfeiture action in this Court on July 13, 2017 and filed the First Amended Verified Complaint (the "Complaint") on October 20, 2017. The Complaint alleges a vast international conspiracy involving Kolawole Akanni Aluko, who allegedly misappropriated public funds of the Republic of Nigeria to bribe a public official in Nigeria in order to obtain lucrative oil contracts, and then laundered the proceeds of those oil contracts by purchasing assets around the world, including the yacht *Galactica Star*. The vast majority of the 200-plus-paragraph Complaint concerns neither the *Galactica Star* nor events that occurred in the Southern District of Texas.

LightRay purchased Earnshaw Associates Ltd., the owner of the *Galactica Star*, from Mr. Aluko, and LightRay has asserted a claim as an innocent owner of the *Galactica Star*. *See* Dkt. 67. As Plaintiff sets forth in the Application, the yacht is currently moored in Mexico, where it is subject to a lien in the amount of $6 million. *See* Pl. Br. at 3, 6. Plaintiff alleges that the lien is the result of a "collusive lawsuit" between Aluko and the plaintiff in that case. *Id.* at 5-7. There is no suggestion that LightRay was part of any collusion or of the lawsuit. It bought Earnshaw after the lawsuit was filed.

Plaintiff and LightRay's counsel have had multiple discussions about the *Galactica Star*, including regarding payment of the lien, returning the yacht to the United States, and payment of the substantial sums required to maintain the yacht going forward. The maintenance costs

2

include payment of crew fees, as a crew must remain on board in order for the yacht to maintain its insurance.

Plaintiff acknowledges that LightRay "is willing to provide the funding necessary to maintain and preserve the *Galactica Star*, provided that the government agrees to subsequently reimburse Lightray for such expenses." Pl. Br. at 10 n.5. (To be clear, the reimbursement would be paid only if Plaintiff were to prevail in this case; if LightRay were to prevail, then the yacht would be its, and it would bear the costs.) Indeed, Plaintiff's Exhibit B shows that LightRay's counsel asked Plaintiff to "represent[] that should the US prevail in the civil forfeiture proceeding and engage in a sale of the *Galactica Star*, or should the *Galactica Star* be sold at any point during these proceedings, LightRay will be permitted to recoup . . . from the sale proceeds" a payment of certain back pay owed to the yacht's crew members. Pl. Br. Ex. B at 1; *see id.* at 2 (stating that LightRay will "be making a similar request to you with respect to LightRay's recovery of payments" to Edge Yachts which would manage the yacht going forward).

Plaintiff, however, has refused to agree that LightRay could ever recoup any amount expended by LightRay in order to maintain and preserve the value of the yacht, even if Plaintiff were to prevail in this action. Plaintiff now requests that this Court order LightRay to not only spend tens of thousands of Euros per month to maintain the yacht in Mexico, but to also retain legal counsel in Mexico to litigate, to lift the attachment on the yacht, and then to bring the yacht into the United States.

## ARGUMENT

### I. This Court Does Not Have Jurisdiction Over The *Galactica Star*

There is no statutory basis for the Court to assert jurisdiction over the *Galactica Star*. To assert jurisdiction over a *res* in a forfeiture action, Plaintiff must establish that the provisions of

3

28 U.S.C. § 1355(b) are satisfied. Plaintiff cannot do so here, and therefore its Application must be denied. *See infra* Point I.A. Even if there were a statutory basis to do so, the Court may not assert jurisdiction over the *Galactica Star* because there are no minimum contacts between the yacht and the State of Texas, and thus the assertion of jurisdiction would violate the Constitution. *See infra* Point I.B.

> **A.** **There Is No Statutory Basis For Jurisdiction In This Court Over the *Galactica Star* Because (1) No Acts Or Omissions Giving Rise to Its Forfeiture Occurred In This District, (2) The *Galactica Star* Is Not Found In This District, and (3) This Court Has No Control Over the *Galactica Star* And Never Has Had Such Control**

To assert *in rem* jurisdiction over the *Galactica Star*, the requirements of 28 U.S.C. § 1355(b) must be satisfied. They are not, and therefore there is no statutory basis for the assertion of jurisdiction over the yacht.

Title 28 U.S.C. § 1355(b)(1) provides that "[a] forfeiture action or proceeding may be brought in (A) the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, or (B) any other district where venue for the forfeiture action or proceeding is specifically provided for in section 1395 of this title or any other statute." Section 1395 in turn provides in pertinent part that "[a] civil proceeding for the forfeiture of property may be prosecuted in any district where such property is found" or "into which the property is brought." It further provides that "[a] proceeding in admiralty for the enforcement of fines, penalties and forfeitures against a vessel may be brought in any district in which the vessel is arrested." 28 U.S.C. § 1395(b, d).

> **1.** **No Acts Or Omissions Giving Rise to Forfeiture Occurred In This District**

None of "the acts or omissions giving rise to the forfeiture" of the *Galactica Star* occurred in this District, and thus there is no jurisdiction pursuant to 28 U.S.C. § 1355(b)(1)(A).

4

*See United States v. Approximately $1.67 Million (US) in Cash*, 513 F.3d 991, 998 n.4 (9th Cir. 2008) ("District courts asserting jurisdiction on the basis of § 1355(b) should make clear findings of acts or omissions occurring in the district upon which the court bases its jurisdiction."). "At a minimum, the government must plausibly allege some connection between the forum district and the *res* that is the subject of the forfeiture action." *United States v. $50,900 in United States Currency of IBC Bank Cashier's Check #162263996 in the Amount of $250,910 in United States Currency*, No. CV 15-14125, 2016 WL 4257328, at *2 (D. Mass. Aug. 11, 2016) (finding venue improper where there was no connection between the *res* and Massachusetts, "nor are there any facts alleged connecting any acts or omissions of claimants to this district").

Plaintiff claims that jurisdiction and venue exist in this District "pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to forfeiture took place in the Southern District of Texas." Compl. ¶¶ 10-11. Neither the Complaint nor the Application, however, ties the particular Defendant asset at issue here—the *Galactica Star*—to acts and omissions that occurred in this District. Rather, the *Galactica Star* is indisputably located in Mexico, and the Complaint alleges that the $82 million purportedly spent by Mr. Aluko to purchase the *Galactica Star* was transferred through bank accounts in London and Switzerland, not in the United States. Compl. ¶¶ 160-62.

The only acts that took place in this District were purchases of furniture by Mr. Aluko; the Complaint alleges that he caused that furniture to be sent to the Nigerian Oil Minister as a bribe. It further alleges that on account of the bribe, he obtained certain contracts, which caused him to receive funds, with which he purchased the *Galactica Star.* Compl. ¶¶ 81-104.

The alleged link between the furniture purchases and the yacht is too tenuous to support this Court's assertion of jurisdiction over the yacht. Jurisdiction over *in rem* assets must be

5

determined on an individual, asset-by-asset basis, not by lumping them together to "form a single ball of wax." *United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 104, 105 (2d Cir. 2000) (holding that, because "there is no jurisdictional hook in the Eastern District [of New York] over the funds wired" from Paris to Miami, "there is no jurisdictional basis for this forfeiture proceeding as it relates to the Miami account").

For example, in *United States v. Lear Jet*, the District of Arizona considered whether it had jurisdiction and was the appropriate venue to decide whether three aircraft, a Lear Jet, a helicopter, and a Cessna, were subject to forfeiture. Order, *United States v. Lear Jet*, No. 2:04-cv-00363 [hereinafter "*Lear Jet*"], Dkt. No. 57 (D. Ariz. Feb. 8, 2005). The underlying criminal activity was a purported "fraudulent conspiracy to transfer funds from Inverlat bank accounts to a Swiss account as well as to other banks and exchange houses in the United States and Mexico." *Id.* at 1-2. The proceeds of the fraudulent transfers were traced to stores in Mexico which laundered the funds, while "[d]uring the same general time period, . . . substantial monetary transfers were made toward the purchase of the subject aircraft." *Id.* at 3.

The court held that venue over the Lear Jet was proper "because the complaint alleges that the acts giving rise to the forfeiture occurred in Arizona." *Id.* at 9. Specifically, the Lear Jet was inspected, negotiated about, sold, and delivered to a claimant in Arizona. *Id.* at 8. In contrast, the court noted that the helicopter and the Cessna did not have any ties in Arizona, nor were the owners of the aircraft in Arizona. *Id.* at 9. The court held that if it lacked jurisdiction over the helicopter and Cessna under a different statutory provision, Section 1355(b)(2), then it would neither have *in rem* jurisdiction over the aircraft nor be an appropriate venue to determine whether the aircraft is forfeitable. *Id.* at 11-12. Months later, the court held that it indeed lacked jurisdiction *in rem* and was not the proper venue with regard to the two aircraft "because it is not

6

where any events leading to the forfeiture action against the aircraft occurred" and the complaint "refer[red] to acts in Arizona regarding defendant Lear Jet, but it d[id] not refer to any acts that occurred in Arizona with respect to" the helicopter and Cessna in Mexico. Order, *Lear Jet*, Dkt. No. 94 (D. Ariz. July 26, 2005), at 8.

Similarly, the District of Massachusetts recently held that it was not the proper venue to hear a case involving "[i]nternationally-based narcotics traffickers [who] generate large amounts of cash from their illegal activities in the United States that must be 'laundered,'" despite allegations that third-party money brokers picked up hundreds of thousands of cash generated from illegal activities in Massachusetts and deposited them in a Massachusetts account. *United States v. $50,900 in United States Currency of IBC Bank Cashier's Check #162263996 in the Amount of $250,910 in United States Currency*, No. 15-14125, 2016 WL 4257328, at *1 (D. Mass. Aug. 11, 2016). The court found that the government failed to "plausibly allege some connection between the forum district and the *res* that is the subject of the forfeiture action," because "there are no facts alleged that the *res* here . . . has any connection at all to the undercover account or to Massachusetts, nor are there any facts alleged connecting any acts or omissions of claimants to this district." *Id.* at *2-3.

### 2. The *Galactica Star* Is Not Found In This District

The *Galactica Star* can be found in Mexico, not in this District. *See* Pl. Br. at 3. Indeed, Plaintiff's Application seeks for LightRay to bring the *Galactica Star* into the District. *Id.* at 14. Plaintiff's circular attempt to have this Court, which is lacking jurisdiction and not an appropriate venue for the *Galactica Star*, grant relief that would convey jurisdiction and venue, is patently improper. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) ("The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties.").

7

The government may argue that 28 U.S.C. § 1395(d) is satisfied because the Court has issued an arrest warrant for the yacht. That argument would be doubly flawed. First, Section 1395(d) addresses where a piece of property is arrested, but the fact that this Court issued an arrest warrant for the yacht does not mean that it has been arrested. Second, and in any event, Section 1395(d) is a venue provision only; it does not create jurisdiction. *See Meacham Corp. v. United States*, 207 F.2d 535, 547 (4th Cir. 1953) ("the provision is directed to venue rather than to jurisdiction"); *compare* 28 U.S.C. Ch. 85 (which includes § 1355 and is titled "District Courts; Jurisdiction") *with* 28 U.S.C. Ch. 86 (which includes § 1395 and is titled "District Courts; Venue").

### 3. This Court Has No Control Over the *Galactica Star*

"[T]he court must have actual or constructive control of the res when an in rem forfeiture suit is initiated." *Republic Nat. Bank of Miami v. United States*, 506 U.S. 80, 87 (1992); *see also, e.g.*, *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 964 (4th Cir. 1999) ("Only if the court has exclusive custody and control over the property does it have jurisdiction over the property so as to be able to adjudicate rights in it that are binding against the world."); *United States v. Real Prop. Located at Incline Vill.*, 976 F. Supp. 1321, 1323 (D. Nev. 1997) ("A court must have actual or constructive control of the res when an in rem forfeiture action is commenced."). "Absent any degree of control over property located in a foreign country, [] a district court's forfeiture order directed against such property would be wholly unenforceable." *United States v. Meza*, 63 F.3d 148, 152 (2d Cir. 1995); *cf. United States v. 51 Pieces of Real Prop. Roswell*, 17 F.3d 1306, 1310 (10th Cir. 1994) ("Even if a district is the proper venue for a civil forfeiture action, the court cannot proceed unless it has jurisdiction over the defendant property.").

A "court has constructive control over property located in a foreign country if it has been seized under circumstances indicating that parties with an interest in it are reasonably likely to

8

receive notice of the action against it and that any judgment against it will be enforced." *Lear Jet* at 3. The *Lear Jet* court held that *in rem* jurisdiction did not exist over the helicopter and Cessna in Mexico because the court did "not have constructive control," in that the Mexican authorities were apparently not fully cooperating with the United States' investigation and did not issue *in rem* arrest warrants against the aircraft. *Id.* at 5-7; *see R.M.S. Titanic*, 171 F.3d at 964 ("when the *res* is not in the court's actual or constructive possession, traditional principles of *in rem* jurisdiction dictate that the court may not adjudicate rights to the *res* and effectively bind others who may have possession").

In *Lear Jet*, the government represented to the court "that Mexican authorities are cooperating with the USA's investigation of the aircraft," and that it was "the intention of the government of Mexico to serve the warrants" arresting the aircraft. *Id.* at 6-7. Here, Plaintiff does not make any representations about the cooperation of the Mexican government that would provide this court constructive control over the *Galactica Star*. Rather, the government has stated that "[d]espite multiple efforts, the United States has not been able to obtain access to most of the filings in the Mexican Lawsuit," thereby indicating that Mexican authorities are plainly refusing to cooperate with the United States' investigation, much less take any action that would confer constructive control on this Court. Pl. Br. at 12 n.6. Accordingly, as in *Lear Jet*, this Court should conclude that it lacks *in rem* jurisdiction over the *Galactica Star*.

While some courts have held that Section 1355(b) confers upon the federal district courts jurisdiction over foreign property in forfeiture cases, *see, e.g.*, *U.S. v. Batato*, 833 F.3d 413 (4th Cir. 2016), the Fifth Circuit has not addressed the issue, and the historic rule that the Court must have control over property before it may exercise jurisdiction over it must apply.

9

### B. The Fifth Amendment Due Process Clause Prohibits the Exercise of Jurisdiction Over the *Galactica Star* in This District

Even if there were a statutory basis for the assertion of *in rem* jurisdiction over the *Galactica Star*, the exercise of such jurisdiction would violate the Due Process Clause of the Fifth Amendment.

The Supreme Court has held that, "in order to justify an exercise of jurisdiction in rem, the basis for jurisdiction must be sufficient to justify exercising 'jurisdiction over the interests of persons in a thing.'" *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977). And, "[t]he standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe*." *Id.*; *see, e.g.*, *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 224 (4th Cir. 2002) ("we apply the minimum contacts test to the district court's exercise of in rem jurisdiction over the Domain Names"). This test requires that a court "ask whether there has been 'some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Harrods Ltd.*, 302 F.3d at 224 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The Supreme Court has similarly instructed that a minimum contacts analysis must query whether a relationship has arisen from direct contacts between a defendant and the forum state, and that courts must "reject[] attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

Accordingly, in *Shaffer*, the Supreme Court held that Delaware's assertion of jurisdiction violated the Due Process Clause because the property that was purportedly the basis of jurisdiction "[wa]s not the subject matter of this litigation, nor [wa]s the underlying cause of

10

action related to the property." 433 U.S. at 213. Here, any claim of jurisdiction is even more tenuous. The *Galactica Star* has absolutely no contact with this District to justify the exercise of *in rem* jurisdiction within the bounds set by the Due Process Clause and the Supreme Court. Neither the Complaint nor the Application alleges any contacts between the *Galactica Star* and Texas. Rather, as discussed in Section I.A *supra*, all allegations regarding activities that purportedly occurred in this District have nothing to do with the *Galactica Star*. Given the lack of minimum contacts with Texas, an exercise of *in rem* jurisdiction would "offend traditional notions of fair play and substantial justice" and be unconstitutional. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). As the Supreme Court sets forth in *Walden*, this Court should reject Plaintiff's attempt to "satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts" that involve not the defendant at issue, but third parties who purportedly conducted criminal acts in this District. 134 S. Ct. at 1122.

## II.     If Granted, the Extensive and Burdensome Relief Sought by the Application Would Be Both Inequitable and Unconstitutional

There is a "long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States, at the time of the criminal act giving rise to forfeiture." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 627 (1989). "The 'Relation Back Doctrine' establishes that title to forfeited property vests with the United States from the date of the offense that gave rise to the forfeiture, although title is not perfected until a final order of forfeiture is entered." *United States v. A Grp. of Islands Known as 'Cayos de Barca' Together with Appurtenances, Attachments & Improvements Thereon*, 185 F. Supp. 2d 117, 120 (D.P.R. 2001) (citing *United States v. Stowell*, 133 U.S. 1 (1890), and *United States v. 92 Buena Vista Ave.*, 507 U.S. 111 (1993)). Thus, here, if Plaintiff "does establish its right to forfeiture [of the *Galactica*

11

*Star*], there is no question that its ownership will relate back to the time the property became tainted with the heinous crime." *Id.* at 121 (internal quotation marks omitted).

The Application, if granted, would convey a windfall to Plaintiff that runs contrary to this well-settled legal principle. The Complaint alleges that the *Galactica Star* was purchased in 2013 using the proceeds of illegal activity. Compl. ¶¶ 160-64. Accordingly, should Plaintiff prevail in this action, its ownership of the *Galactica Star* would indisputably relate back to 2013. Yet, the Application seeks for LightRay to pay for the yacht's maintenance, insurance, upkeep, as well as to litigate and potentially pay upwards of $6 million in order to lift a lien in Mexico over the yacht regardless of whether Plaintiff prevails.

LightRay would certainly pay the costs of upkeep if it were certain that at the end of this proceeding, it would hold title to the *Galactica Star*. It would similarly pay the costs of upkeep if it were assured that, should Plaintiff prevail in this case, LightRay would be reimbursed by Plaintiff for the costs that LightRay incurred in maintaining what was ultimately determined to be Plaintiff's yacht. But it is patently unfair to require LightRay to pay for the upkeep of an asset that Plaintiff claims it owns.

Plaintiff claims that "the caselaw states that whoever has current dominion over an asset should pay for the upkeep of that asset under Section 983(j)." Pl. Br. at 9-10. But the two authorities it relies on are inapposite. In one case, the government sought a "protective order to preserve the status quo," and the court specifically held that "it appear[ed] proper to do so." Government's Application for a Protective Order, *United States v. Real Prop. Known as 2291 Ferndown Lane*, Dkt. No. 28, (W.D. Va. Apr. 29, 2011) at 2; Protective Order, *Ferndown*, Dkt. No. 29 (W.D. Va. May 2, 2011) at 1. The court ultimately found that the property was located in the district and within the jurisdiction of the court, found that venue was proper, and ordered

12

forfeiture of the property to the government. Final Order and Judgment of Forfeiture, *Ferndown*, Dkt. No. 68 (W.D. Va. Oct. 23, 2012) at 1, 3. In contrast, here, Plaintiff is not seeking to "preserve the status quo," but is seeking extensive affirmative actions on the part of LightRay including, outrageously, for LightRay to "take all available steps to bring the *Galactica Star* into the United States." Pl. Br. at 10.

Nor is there merit to Plaintiff's reliance on *475 Martin Lane*. *See* Pl. Br. at 10. There, the claimant and the government stipulated, and the court approved, that the claimants would pay future obligations including mortgage, taxes, and insurance, and the court was merely "holding the Claimants to their agreement to pay these obligations." *United States v. Real Prop. Located at 475 Martin Lane*, No. 04-cv-2788, 2006 WL 4954923, at *2 (C.D. Cal. Oct. 26, 2006). Here, Plaintiff admits that LightRay has proposed that it would "provide the funding necessary to maintain and preserve the *Galactica Star*, provided that the government agrees to subsequently reimburse Lightray for such expenses." Pl. Br. at 10 n.5. LightRay stands by this proposal, which is an equitable solution that accounts for both (1) the risk to LightRay that Plaintiff will ultimately prevail in this matter and will be deemed to be the owner of the *Galactica Star* since 2013, and (2) the risk to Plaintiff that LightRay will establish that it is an innocent owner and that the yacht is therefore not subject to forfeiture.

Plaintiff's proposed order is not only inequitable, but it is also unconstitutional. An order directing LightRay to pay tens of thousands of Euros on a monthly basis; to retain and direct Mexican counsel to contest the attachment; and to provide monthly progress reports "to ensure that Lightray is acting diligently," including "a weekly accounting . . . detailing all the actions it has taken in the Mexican Lawsuit" and "all new pleadings or documents" filed in Mexico, Pl. Br. at 14—all without agreeing to reimburse LightRay if it is eventually determined that the

13

*Galactica Star* belongs to the government, constitutes a taking without just compensation and involuntary servitude that violates the Thirteenth Amendment.[1]

## **CONCLUSION**

For the foregoing reasons, LightRay respectfully requests that this Court deny Plaintiff's Application in its entirety.

Dated: January 23, 2018  
       Houston, Texas

Respectfully Submitted,

SMYSER KAPLAN & VESELKA, L.L.P.
By: */s/ Lee K. Kaplan*
    Lee K. Kaplan
    Attorney-in-Charge
    State Bar No. 11094400
    S.D. Id. No. 1840
    700 Louisiana, Suite 2300
    Houston, Texas 77002
    (713) 221-2323
    (713) 221-2320 (fax)
    Email: lkaplan@skv.com

DECHERT LLP

    Andrew J. Levander*
    Benjamin E. Rosenberg*

---

[1] Notably, even if LightRay were a convicted criminal such relief would violate the Excessive Fines Clause of the Eighth Amendment, which "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." U.S. Const. amend. VIII; *Austin v. United States*, 509 U.S. 602, 609-10, 618 (1993) ("forfeiture generally and statutory in rem forfeiture in particular historically have been understood, at least in part, as punishment" (internal quotation marks omitted)); *see also* 18 U.S.C. § 983(g)(4) ("If the court finds that the forfeiture is grossly disproportional to the offense it shall reduce or eliminate the forfeiture as necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution."). Even if LightRay committed some offense that would defeat its innocent ownership claim over the Galactica Star—and again, it did not—the relief sought by Plaintiff would be "grossly disproportional to the gravity" of any such offense. *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (holding that forfeiture of $357,144 violated the Excessive Fines Clause where respondent actually committed a crime subject to a sentence of six months and a fine of $5,000).

>Daphne T. Ha*
>1095 Avenue of the Americas
>New York, New York 10036
>Tel: (212) 698-3500
>Fax: (212) 698-3599
>andrew.levander@dechert.com
>benjamin.rosenberg@dechert.com
>daphne.ha@dechert.com
>
>*Attorneys for Claimant LightRay Capital, LLC*

* admitted *pro hac vice*

15