# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff<br><br>　　v.<br>THE M/Y GALACTICA STAR, BEING A 65-METER MOTOR YACHT BUILT BY HEESEN SHIPYARDS WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9679830, AND REGISTERED UNDER THE LAWS AND FLAG OF THE CAYMAN ISLANDS AT THE PORT OF GEORGE TOWN, INCLUDING ALL FIXTURES, FITTINGS, MANUALS, STOCKS, STORES, INVENTORIES, AND EACH LIFEBOAT, TENDER, AND OTHER APPURTENANCE THERETO, INCLUDING, BUT NOT LIMITED TO, THE TENDER BOAT RECORDED AS A 7.5 METER DARIEL "GUEST TENDER" WITH ID/SERIAL NO. DRLDT759G313, AND ANY PROPERTY TRACEABLE THERETO;<br><br>ANY AND ALL FUNDS, PROCEEDS, CASH, OR BENEFITS TO BE DISBURSED OR OTHERWISE OWING TO ONE57 79 INC., OR TO ITS SUCCESSORS OR ASSIGNS, OUT OF ANY SURPLUS FUNDS RESULTING FROM THE FORECLOSURE AUCTION OF REAL PROPERTY LOCATED IN NEW YORK, N.Y., AND COMMONLY KNOWN AS 157 WEST 57TH STREET, UNIT 79, NEW YORK, N.Y. 10019; | CIVIL ACTION NO. 4:17-CV-02166<br><br><br><br>**LIGHTRAY'S OPPOSITION TO UNITED STATES' MOTION FOR JUDGMENT ON THE PLEADINGS TO STRIKE PUTATIVE CLAIMANT LIGHTRAY CAPITAL, LLC AND SUPPORTING MEMORANDUM** |

REAL PROPERTY LOCATED IN NEW
YORK, N.Y., COMMONLY KNOWN AS
1049 FIFTH AVENUE, UNITS 11B AND
12B, NEW YORK, N.Y. 10032, AND ALL

APPURTENANCES, IMPROVEMENTS,
AND ATTACHMENTS LOCATED
THEREON, AND ANY PROPERTY
TRACEABLE THERETO;

REAL PROPERTY LOCATED IN
MONTECITO, CALIF., COMMONLY
KNOWN AS 807 CIMA DEL MUNDO
ROAD, MONTECITO, CALIF. 93108,
AND ALL APPURTENANCES,
IMPROVEMENTS, AND
ATTACHMENTS LOCATED
THEREON, AND ANY PROPERTY
TRACEABLE THERETO;

REAL PROPERTY LOCATED IN
MONTECITO, CALIF., COMMONLY
KNOWN AS 815 CIMA DEL MUNDO
ROAD, MONTECITO, CALIF. 93108,
AND ALL APPURTENANCES,
IMPROVEMENTS, AND
ATTACHMENTS LOCATED
THEREON, AND ANY PROPERTY
TRACEABLE THERETO;

ALL RIGHTS AND INTERESTS HELD
BY RIVERMOUNT INTERNATIONAL
LTD., OR ITS AFFILIATES OR
ASSIGNEES, IN THE SUBORDINATED
CONVERTIBLE PROMISSORY NOTE
EXECUTED BETWEEN CROSS
HOLDINGS, INC., AND RIVERMOUNT
INTERNATIONAL LTD., DATED ON
OR ABOUT JULY 15, 2015, AS VARIED
OR AMENDED BY THE PARTIES
THERETO, AND ALL PROPERTY

2

TRACEABLE THERETO,
     Defendants *In Rem*.

### LIGHTRAY'S OPPOSITION TO UNITED STATES' MOTION FOR JUDGMENT ON THE PLEADINGS TO STRIKE PUTATIVE CLAIMANT LIGHTRAY CAPITAL, LLC AND SUPPORTING MEMORANDUM

Claimant LightRay Capital, LLC ("LightRay"), by and through undersigned counsel, opposes the United States' Motion for Judgment on the Pleadings to Strike Putative Claimant LightRay Capital, LLC.

## I.   INTRODUCTION

The Supreme Court recently called into question the practice of modern civil forfeiture, writing, "This system—where police can seize property with limited judicial oversight and retain it for their own use—has led to egregious and well-chronicled abuses." *Leonard v. Texas*, 137 S. Ct. 847, 848, 197 L. Ed. 2d 474 (2017).

The government moves to strip LightRay Capital, LLC ("LightRay") and its holding companies of their right to contest forfeiture on the basis that LightRay's claims are filed by LightRay itself, a company that owns the shares in holding companies that own the defendant assets, as opposed to the claims being filed by the holding companies themselves.  While the government asserts that LightRay lacks standing to file the claims on behalf of its holding companies, it cites no precedential authority in support of its position.  Instead, the government cites district court cases from districts outside the Fifth Circuit, which, upon closer examination, comport neither with the plain language of Rule G nor the forfeiture principles espoused by the Fifth Circuit.

The plain language of Rule G, in relevant part, requires only that a claimant state his interest in a defendant asset.  Under Fifth Circuit law, a facially colorable interest, even a possessory interest, either legal or equitable, is sufficient to confer

standing for purposes of contesting forfeiture. LightRay's claims go far beyond this. LightRay wholly and/or substantially owns the companies that own the defendant assets in this case. On December 29, 2017, LightRay filed detailed claims identifying its ownership of the holding companies that own the defendant assets. It was clear from the claim that LightRay has significant rights and property interest in those assets. The claims are thus sufficient and should survive the government's motion to strike.

Furthermore, even if the Court were to decide that LightRay's claims suffer from some technical statutory standing infirmity, the Court should not levy the extreme sanction of dismissal, but rather exercise its discretion to allow LightRay's holding companies to file the amended claims attached hereto. Fairness and justice require such leave as does Fifth Circuit precedent, because: (i) the amended claims will not result in undue delay or prejudice to the government as the case has been stayed; (ii) LightRay acted in good faith; (iii) this is LightRay's first amendment request; and (iv) the amended claims would cure the technical defect that forms the basis of the government's motion.

## II.    STATEMENT OF FACTS

On July 14, 2017, the government filed a forfeiture complaint against the defendant assets in this case. (Dkt. 1).[1] Three months later, the government sought leave to amend its complaint (Dkt. 33) and filed a first amended complaint on October 20, 2017. (Dkt. 35).

On December 29, 2017, LightRay filed its claims and statement of interest. (Dkt. 61). In the filing, LightRay meticulously identified its significant control over and property interest in the defendant assets. (*See id*.). LightRay stated that it owns 100% of the shares of Earnshaw Associates Limited, which in turn owns the

---

[1] "Dkt." denotes docket entry followed by a docket control number.

4

defendant assets as follows:

(a)  The M/Y Galactica Star, being a 65-meter motor yacht built by Heesen shipyards with International Maritime Organization number 9679830, and registered under the laws and flag of the Cayman Islands at the port of George Town, including all fixtures, fittings, manuals, stocks, stores, inventories, and each lifeboat, tender, and other appurtenance thereto, including, but not limited to, the tender boat recorded as a 7.5 meter Dariel "guest tender" with ID/Serial No. DRLDT759G313, and any property traceable thereto;

(b)  Real property located in New York, N.Y., and commonly known as 157 West 57th Street, Unit 79, New York, N.Y. 10019, and all appurtenances, improvements, and attachments located thereon, and any property traceable thereto, including any and all funds, proceeds, cash, or benefits to be disbursed or otherwise owing to One57 79 Inc., or to its successors or assigns, out of any funds resulting from any foreclosure auction of this real property;

(c)  1049 5th Avenue, Inc., a New York corporation whose assets include real property located in New York, N.Y., commonly known as 1049 Fifth Avenue, Units 11B and 12B, New York, N.Y. 10032, and all appurtenances, improvements, and attachments located thereon, and any property traceable thereto (Earnshaw subsequently sold 50.1% of its interest therein);

(d)  Wamdara, Inc., a California company (Earnshaw subsequently sold 50.1% of its interest therein) whose assets include:

(i)  real property located in Montecito, California, commonly known as 807 Cima del Mundo Road, Montecito, Calif. 90077, and all appurtenances, improvements, and attachments located thereon, and any property traceable thereto; and

(ii)  real property located in Montecito, California, commonly known as 815 Cima del Mundo Road, Montecito, Calif. 90077, and all appurtenances,

improvements, and attachments located thereon, and any property traceable thereto; and

(e)   An 87.5% ownership interest in the rights and interests held by Rivermount International Ltd., or its affiliates or assignees, in the Subordinated Convertible Promissory Note executed between Cross Holdings, Inc., and Rivermount International Ltd., dated on or about July 15, 2015, as varied or amended by the parties thereto, and corresponding property traceable thereto.  (*Id.* at 3-4.)

On May 4, 2018, the Court ordered that the case be stayed under 18 U.S.C. § 981(g)(1), barring four limited exceptions for motions, stipulations, and requests: (i) to protect the value of the defendant assets; (ii) to permit interlocutory sale; (iii) for relief that could be fairly considered solely on the pleadings; and (iv) for relief concerning other matters that would not adversely affect the government's ability to conduct the ongoing criminal investigation and would not burden a claimant's right against self-incrimination.  (Dkt. 123.)

On June 1, 2018, the government filed its motion for judgment on the pleadings to strike putative claimant LightRay Capital, LLC, arguing essentially that LightRay does not have technical statutory standing to file claims on behalf of the companies it owns, because those holding companies are the actual owners of the defendant assets; the government thus argues that LightRay does not have an ownership interest in the defendant assets sufficient to establish statutory standing.

## III.   ARGUMENT

### A.   The Government's Motion Cites No Precedential Authority and Comports with Neither Rule G Nor the Forfeiture Principles of the Fifth Circuit

The government cites no precedential authority—nothing from the Fifth Circuit nor the districts within it—for its position that LightRay lacks statutory

standing. On the contrary, LightRay's property interest in the defendant assets as an owner of the holding companies that own those assets confers statutory standing under Rule G and the forfeiture principles that the Fifth Circuit has prescribed. To be clear, because the companies that own the assets are merely holding companies, LightRay is the true owner of the defendant assets. And even were LightRay not to be considered a technical owner, as explained below, it would still have a significant equitable property interest by virtue of its ownership of the holding companies, thereby having standing.

Rule G(5)(a), in relevant part, requires a claimant to identify "the specific property claimed" and to "state the claimant's interest in the property." Rule G thus requires a claimant to have a *property interest* (not necessarily an ownership interest) to have standing. Indeed, the Fifth Circuit, among others, recognizes that even a "possessory interest" in a defendant asset is a *property interest* for purposes of conferring standing. *See, e.g., United States v. $321,470.00, U.S. Currency*, 874 F.2d 298, 300 (5th Cir. 1989); *see also United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in United States Currency*, 859 F.3d 1085 (D.C. Cir. 2017) (underscoring that the requirements for a claimant to demonstrate constitutional standing to challenge a forfeiture are very forgiving; in general, any colorable claim on the property suffices, typically, as an ownership or possessory interest). Here, LightRay's claims show much more than a mere possessory interest because LightRay essentially owns and controls those assets through its holding companies.

The government itself recognized LightRay's significant property interest (tantamount to an ownership interest) when it moved this Court to have LightRay pay for all of Defendant M/Y Galactica Star's expenses (*see* Dkt. 69), and later entered into a stipulation concerning that asset (*see* Dkt. 126), which the government knew LightRay owned through its 100% *stock ownership* of

Earnshaw.

Moreover, the district court cases that the government relies on do not comport with Rule G or Fifth Circuit precedent, because they conflate *ownership interest* with *property interest*, and do not recognize *equitable interest* as sufficient for standing purposes as does the Fifth Circuit. *See United States v. 1977 Porsche Carrera 911 VIN 9117201924, License No. 459 DWR*, 946 F.2d 30 (5th Cir. 1991) (a mere possessory interest of either legal *or equitable* nature in seized item sufficient to satisfy standing to contest forfeiture) (emphasis added).

For example, the case that the government leads with, *United States v. Young*, 77 F. Supp. 3d 1191 (D. Utah 2014), provides little to no reasoning to support its conclusion concerning standing. Instead, it summarily relies on a Southern District of Florida case, which in turn relies on an Eleventh Circuit decision, *United States v. Watkins*, 320 F.3d 1279 (11th Cir. 2003), that discusses 21 U.S.C. § 853(n)(6), which, *inter alia*, recognizes that a claimant may successfully assert an interest in property that is subject to criminal forfeiture by being "a *bona fide* purchaser for value of the right, title, <u>or</u> interest in the property" and "at the time of purchase reasonably without cause to believe that the property was subject to forfeiture . . . ." *Watkins*, 320 F.3d at 1282 (emphasis added); *see also United States v. Salam*, Inc., 191 F. Supp. 2d 725, 727 (E.D. La. 2001) (same). So, under *Watkins*, the Eleventh Circuit precedent upon which *Young* is based, LightRay's claim provides a sufficient basis for standing, because it shows LightRay is a *bona fide* purchaser for value of at least the right and interest in the defendant assets.

The government's reliance on *United States v. 479 Tamarind Dr.*, 2011 WL 1045095, at *2 (S.D.N.Y. Mar. 11, 2011) is also inapposite. There, the district court's decision is based predominantly on what it believed the Second Circuit was suggesting in a decision that did not actually analyze the issue of whether a

shareholder has a legal *or equitable property interest* in the property of a corporation. *See United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993). Instead, the Second Circuit merely stated that "it is unclear to what part of the seized properties the defendants may have legitimate claims," conspicuously leaving unresolved the issue of whether having an equitable property interest confers standing. *Id*.

The government's next case, *United States v. Dupree*, 781 F. Supp. 2d 115, 140 (E.D.N.Y. 2011), similarly fails to support its position. The *Dupree* court found that the claimant lacked standing, relying on a Second Circuit case, *United States v. Wallach*, 935 F.2d 445 (2d Cir. 1991). *Wallach*, however, if read in conjunction with Rule G, would support a finding that LightRay has standing in this case. *See id.* at 462. The *Wallach* court clearly recognized that "[w]hile shareholders have neither a right to manage the corporation nor a right to hold title to corporate property, their ownership of stock in the corporation is nonetheless ***a property interest***." *Id.* (emphasis added). Under *Wallach's* recognition that shareholders have a property interest in corporate property, LightRay has standing as a claimant with at least an equitable property interest in the defendant assets— the forfeiture principles in the Fifth Circuit support this conclusion. *See United States v. 1977 Porsche Carrera 911 VIN 9117201924, License No. 459 DWR*, 946 F.2d 30 (5th Cir. 1991) (possessory interest of either legal ***or equitable*** nature in seized item sufficient to satisfy court of his standing to contest forfeiture) (emphasis added).

The government's reliance on *United States v. Real Property Associated with First Beneficial Mortgage Co.*, 2009 WL 1035233, at *3-4 (W.D.N.C. Apr. 16, 2009) is equally unconvincing, because the decision was premised again on a lack of "ownership interest," ignoring all together the importance of "property interest" under Rule G. Furthermore, the appellate precedent on which the

Western District of North Carolina seems to have relied to reach its conclusion concerned "general creditors," *see United States v. Ribadeneira*, 105 F.3d 833, 835 (2d Cir. 1997), not shareholders (as in this case) who have a more direct and substantial *property interest* in the defendant assets themselves. A sister district court in the Fifth Circuit, on the other hand, recognized that having greater rights than a general creditor, such as the power to sell an asset, is sufficient to demonstrate a facially colorable claim. *United States v. Salam, Inc.*, 191 F. Supp. 2d 725, 728 (E.D. La. 2001). Based on LightRay's claim, it is beyond debate that LightRay is empowered to sell its portion of the defendant assets with even more independence than the claimants in *Salam*.

When examined in depth, there is simply no precedential authority to support the government's motion to strip LightRay of its standing as a claimant in this case. To do so would be to incorrectly read a requirement into Rule G that the rule does not support. Rule G explicitly recognizes standing for any claimant that has a property interest in an asset, including an equitable interest, as interpreted by the Fifth Circuit, which LightRay certainly has by virtue of its ownership of the holding companies that own the assets. LightRay thus requests that this Court deny the government's motion and allow LightRay to proceed as a claimant.

**B.      At a Minimum, the Court Should Grant Leave to Amend Because Justice Requires It**

If the Court is inclined to grant the government's motion, LightRay would seek at a minimum permission to have its holding companies file the amended claims in Exhibits One to Four filed concurrently herewith.

Federal policy strongly favors resolving cases on the merits instead of taking measures that will result in a dismissal based on a technical matter. *See, e.g., Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (recognizing a strong policy in favor of decisions on the merits); *Rogers v. Kroger Co.*, 669 F.2d 317,

322 (5th Cir. 1982) (same); *In re Crandall*, 400 B.R. 111, 116 (Bankr. S.D. Tex. 2008) (same); *Kelly v. United States*, 2016 WL 3648270, at \*4 (S.D. Miss. Feb. 24, 2016) (same); *Bank of Am., N.A. v. iSmile Family Dentistry, Inc.*, 2017 WL 7693377, at \*1 (N.D. Miss. Aug. 14, 2017) (same); *Brown v. Bridges*, at \*2 (N.D. Tex. Feb. 11, 2014) (same); *Pittman v. Seterus, Inc.,* 2015 WL 1432619, at \*1 (N.D. Tex. Mar. 2, 2015) (same).

As it relates to pleading amendments, this action is governed by Fed R. Civ. P. 15(a)(2), which, in relevant part, instructs: "The court should freely give leave [to amend] when justice so requires." *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (courts should heed the mandate that leave to amend "shall be freely given when justice so requires"); *see also United States v. $164,750 in U.S. Currency*, 2011 WL 2224044, at \*1 (D. N.J. June 8, 2011) (allowing claimant to amend his claim was proper under Rule 15(a)(2) which provides that leave to amend should be freely given); *United States v. All Funds in the Account of Prop. Futures, Inc.*, 820 F. Supp. 2d 1305, 1320-24, ,1338 (S.D. Fla. 2011) (declining to grant motion to dismiss claimant from action where the claim could be amended to make clear that the two entities were each filing a claim); *United States v. $125,934.62*, 370 F.3d 1325, 1329-30 (11th Cir. 2004) (district court abused its discretion in not extending time to file amended claim so that claimants could comply with the verification requirement; court should have taken into account the amount of money at stake, and that the Government was aware of the foreign claimants' attempt to file claims in the proper form); *United States v. Real Property at 2659 Roundhill Drive*, 194 F.3d 1020, 1024 (9th Cir. 1999) (district court exercised discretion to permit late filing by ignoring the Government's Rule C(6) argument in its motion for summary judgment).

The Fifth Circuit and this Court have recognized that "the language of [Rule 15] 'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop.*

*Group, L.P.*, 427 F.3d 987, 994 (5th Cir.2005) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir.2002)), *quoted by Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 666 (S.D. Tex. 2016); *see Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (unless futile, courts generally allow one chance to amend deficient pleadings before dismissing with prejudice), *cited by Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, 947–48 (S.D. Tex. 2016); *see also United States v. Currency $267,961.07*, 916 F.2d 1104, 1108–09 (6th Cir. 1990) (remanding because the court should have made an express determination of the propriety of granting leave to amend).

The district court may consider a variety of factors in determining whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994 (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir.1981)).

### C.    All Five *Jones* Factors Support Granting Leave to Amend

Each of the five *Jones* factors (*see supra*) supports granting LightRay and its associated entities leave to amend their claims to cure the alleged technical infirmity.

*First*, this case was stayed prior to the government's motion, and so the amendment will not cause any undue delay.

*Second*, the government cannot point to any bad faith or dilatory motive, because there was none.  This was simply a case of LightRay's previous counsel not being aware of the alleged technical statutory standing requirements when filing LightRay's claims.  Furthermore, LightRay's claims clearly identified the companies that directly own the defendant assets as well as LightRay's complete

and/or significant ownership of those companies.  The candor and completeness of LightRay's claims evidence nothing but good faith.

*Third*, this is LightRay's first amendment request, so there have been no failures to cure deficiencies by amendments previously allowed.

*Fourth*, by virtue of LightRay's detailed claims, the government was on full notice of the companies that directly own the defendant assets as well as LightRay's ownership of those companies.  Combined with the fact that this case has been stayed, the government will not suffer any prejudice, let alone "undue prejudice," with respect to either knowledge or time as a result of the amendment.

*Fifth*, the amendment is not futile because it cures the technical defect that forms the basis of the government's motion.

In conclusion, the government itself has previously sought and been granted this Court's leave to amend its own pleadings.  By any measure, fairness dictates that the attached amended claims (Exhibits One to Four) be deemed filed.

## IV.    CONCLUSION

For the foregoing reasons, LightRay respectfully requests that the Court deny the government's motion and allow LightRay's holding companies to file the amended claims in Exhibits One to Four.

Dated: July 6, 2018

Respectfully submitted,

ALMADANI LAW

*/s/ Yasin M. Almadani*

Yasin M. Almadani

Attorney-in-Charge
CA State Bar No. 2424798
14742 Beach Blvd., Suite 410
La Mirada, California 90638
(213) 335-3935
Email: yma@LawAlm.com

SMYSER KAPLAN & VESELKA, L.L.P.

Lee L. Kaplan
Local Co-Counsel
State Bar No. 11094400
S.D. Id. No. 1840
700 Louisiana, Suite 2300
Houston, Texas 77002
(713) 221-2323
(713) 221-2320 (fax)
Email: lkaplan@skv.com